IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BEN WALKER, | : | CIVIL ACTION NO. **3:CV-12-2607** |
| | : | |
| Plaintiff | : | (Judge Mariani) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| BANK OF AMERICA, | : | |
| | : | |
| Defendant | : | |

## REPORT AND RECOMMENDATION

### I. BACKGROUND.

On December 28, 2012, Plaintiff Ben Walker, a resident at 117 Duck Hollow circle, Stroudsburg, Monroe County, Pennsylvania, filed his original Complaint against Defendant Bank of America. (Doc. 1). Plaintiff's original Complaint was on a form Complaint with six attached typed pages. Plaintiff paid the filing fee.

On January 24, 2013, Plaintiff Ben Walker and his wife, Plaintiff Sandy Walker, jointly filed an Amended Complaint. (Doc. 3). Plaintiffs' Amended Complaint was on a form Complaint with ten attached typed pages. Plaintiffs attached several Exhibits to their Amended Complaint, Exs. A-Q.

On January 29, 2013, Plaintiff Ben Walker filed, on his own, a Second Amended Complaint (Doc. 5). The Clerk of Court incorrectly docketed the Second Amended Complaint as the Amended Complaint. We directed the Clerk of Court to correct the docket to reflect that the Document 5 pleading was Plaintiff Ben Walker's Second Amended Complaint.

Sandy Walker, who was also named as a Plaintiff in the Amended Complaint (Doc. 3) but not the original Complaint, was not named as a Plaintiff in the Second Amended Complaint and, she did not sign the Doc. 5 pleading. In fact, Plaintiff Ben Walker stated on the last page of his Second Amended Complaint (Doc. 5, p. 14) that he requested to voluntarily dismiss Sandy Walker as a Plaintiff in this case. Thus, on January 31, 2013, we issued an Order and directed the Clerk of Court to remove Sandy Walker's name from the docket as a Plaintiff in this action. (Doc. 6). Thus, we refer to Ben Walker herein as "Plaintiff." Plaintiff Ben Walker's Second Amended Complaint was on a form Complaint with ten attached typed pages. Plaintiff Ben Walker attached several Exhibits to his Second Amended Complaint, Exs. A-Q. The Exhibits attached to Plaintiff's Second Amended Complaint appear to be the same Exhibits attached to the Amended Complaint.

Further, in our January 31, 2013 Order, we directed the Clerk of Court to issue the Summons with respect to Plaintiff Ben Walker's Second Amended Complaint and to forward it to Ben Walker, and we directed Ben Walker to serve Defendant Bank of America with the Summons and his Second Amended Complaint. (Doc. 6).

On February 28, 2013, Plaintiff returned the Summons indicating that Defendant Bank of America was served with the Summons and his Second Amended Complaint. (Doc. 8). On March 4, 2013, Plaintiff filed a Motion for Entry of Default as against Defendant Bank of America for failure to timely respond to his Second Amended Complaint and Clerk's Entry of Default as to this Defendant was filed. (Docs. 9 & 10).

On March 5, 2013, counsel entered an appearance for Defendant Bank of America ("BOA") stating that this Defendant is correctly identified as FIA Card Services, N.A. (Doc. 11). Also, on

March 5, 2013, counsel for Defendant Bank of America filed a 1-page Disclosure Statement, under Fed.R.Civ.P. 7.1, again stating that this Defendant is actually FIA Card Services, N.A., and that it is a nongovernmental corporate party, with a parent corporation known as Bank of America Corporation. (Doc. 12). Further, on March 5, 2013, counsel for Defendant Bank of America filed a Motion to Dismiss Plaintiff's Second Amended Complaint, under Fed.R.Civ.P. 12(b)(6) and 9(b), and a support brief. **(Docs. 13** & 14).

On March 7, 2013, Plaintiff filed a 1-page Motion for Default Judgment seeking entry of a Judgment against Defendant in the amount of $5 million. **(Doc. 15).**

On March 8, 2013, Defendant Bank of America filed a Motion to Set Aside the Entry of Default, under Fed.R.Civ.P. 55(c), and Opposition to Plaintiff's Motion for Default Judgment with an attached Exhibit A, Affidavit of Defendant's counsel, and a brief in support thereof. **(Docs. 16** 16-1 & 17).

On March 13, 2013, Plaintiff filed three (3) Motions for Extension of Time, namely, to respond to Defendant Bank of America's Motion to Set Aside the Entry of Default, under Fed.R.Civ.P. 55(c), and Opposition to Plaintiff's Motion for Default Judgment, to respond to Defendant's Disclosure Statement, and to respond to Defendant's brief in support of its Motion to Dismiss. (Docs. 18, 19 & 20). In his three Motions, Plaintiff basically stated that the named Defendant in his Second Amended Complaint was Bank of America and that his Defendant was not actually FIA Card Services, N.A., as Defendant's counsel represented.

The Court denied as moot Plaintiff's Motion for an Extension of Time (Doc. 19) to respond to Defendant Bank of America's 1-page Disclosure Statement, under Fed.R.Civ.P. 7.1, since Plaintiff was not required to respond to this filing. (Doc. 21).

The Court denied as premature Plaintiff's Motion for an Extension of Time (Doc. 18) to respond to Defendant Bank of America's brief in support of its Motion to Set Aside the Entry of Default and Opposition to Plaintiff's Motion for Default Judgment, since Plaintiff's opposition brief was not due until March 22, 2013. (Doc. 21).

The Court also denied as premature Plaintiff's Motion for an Extension of Time (Doc. 20) to respond to Defendant Bank of America's brief in support of its Motion to Dismiss, since Plaintiff's opposition brief was not due until March 19, 2013. (Doc. 21).

On March 15, 2013, Plaintiff filed another Motion for Extension of Time to respond to Defendant Bank of America's Motion to Set Aside the Entry of Default, under Fed.R.Civ.P. 55(c), and Opposition to Plaintiff's Motion for Default Judgment. (Doc. 22). Plaintiff again stated that the named Defendant in his Second Amended Complaint was Bank of America and not FIA Card Services, N.A., and that he would provide evidence that Bank of America defaulted by not responding to his Second Amended Complaint.

The Court again denied as premature Plaintiff's Motion for an Extension of Time (Doc. 22) to respond to Defendant Bank of America's brief in support of its Motion to Set Aside the Entry of Default and Opposition to Plaintiff's Motion for Default Judgment, since Plaintiff's opposition brief was not due until March 22, 2013. (Doc. 23).

On March 19, 2013, Plaintiff filed his opposition brief to Defendant Bank of America's Motion to Dismiss his Second Amended Complaint. (Doc. 24).

On March 22, 2013, Plaintiff filed his opposition brief to Defendant Bank of America's Motion to Set Aside the Entry of Default and to Defendant's Opposition to Plaintiff's Motion for Default Judgment. (Doc. 25).

On April 5, 2013, Defendant filed its reply brief in support of its Motion to Dismiss Plaintiff's Second Amended Complaint. (Doc. 26). Also on April 5, 2013, Defendant filed its reply brief in support of its Motion to Set Aside the Entry of Default and to Defendant's Opposition to Plaintiff's Motion for Default Judgment. (Doc. 27). On April 15, 2013, Plaintiff filed, *sans* leave of court, sur-reply briefs to Defendant's Motion to Dismiss and to Defendant's Motion to Set Aside the Entry of Default. (Docs. 28 & 29). Presently, the **Docs. 13, 15 and 16** filings are ripe for disposition. We will address all three Motions in this R&R. We have been assigned this case for pre-trial matters.

## II.     ALLEGATIONS OF PLAINTIFF'S SECOND AMENDED COMPLAINT (DOC. 5)

In his Second Amended Complaint, Plaintiff Ben Walker basically alleges that Defendant Bank of America committed multiple acts of fraud. Plaintiff's *pro se* pleading is not artfully drafted and is difficult to comprehend. Plaintiff alleges that he contacted Defendant regarding an account (ending 9473) he had. Plaintiff also states that Defendant's representatives then ignored all payments that he paid Defendant, including a $10,000 check he sent Defendant on June 1, 2009. Plaintiff states that he then received a letter from Defendant, on September 29, 2009, indicating that his credit line was reduced to $29,300 because he had a pattern of late payments on his accounts with other creditors. Plaintiff indicates that the letter was issued in retaliation for his questions about

his account. Plaintiff seems to allege that the September 29, 2007 letter from Defendant was fraudulent. Plaintiff attached as Exhibit A to his Doc. 5 pleading his referenced check and the Defendant 's letter. (Doc. 5, p. 3).

Plaintiff avers that on October 6, 2009, another representative of Defendant (Melanie Brancaccio) sent Sandy Walker, a former Plaintiff in this case, a letter regarding account 9473, and stated that Defendant's "records indicate that on November 17, 2003 we transferred $68,270.00 to your Bank of America account number 020 320 4557 and on October 30, 2007, we transferred $5,000.00 to the same account." Plaintiff seems to allege that the October 6, 2007 letter from Defendant was fraudulent. (Id.).

Plaintiff avers that the account ending 9473 was the account number on the MBNA America billing statements he received before MBNA America's merger with Defendant Bank of America. Plaintiff also states that account number 020 320 4557 is the personal interest checking account number on the Fleet One Classic Statements in the name of he and Sandy Walker. (Id.). Thus, Plaintiff concludes that the October 6, 2009 letter Defendant's representative (Melanie Brancaccio) sent Sandy Walker stating that on November 17, 2003, we transferred $68,270.00 to your Bank of America account number 020 320 4557 was a "complete fraudulent letter" since Defendant Bank of America did not own this account at that time. Plaintiff states account number 020 320 4557 was owned by Fleet Bank in November 2003. (Id., p. 4). Plaintiff indicates that his Exhibit B shows that account number 020 320 4557 was owned by Fleet Bank in November 2003. Plaintiff also states that MBNA America directly deposited the $68,270.00 to he and Sandy's account number 020 320 4557 which was owned by Fleet Bank. Plaintiff states that Fleet Bank and Bank of America did not

6

merge until July and August 2004. Plaintiff cites to his Ex. D. Plaintiff also states that his Ex. E shows that in January 1, 2006, MBNA merged with and into Bank of America. (Id., p. 4).

Plaintiff states that in the November and December 2006 billing statements submitted by National Education Association ("NEA") Member Benefits, MBNA America's name was removed and payments were to be sent to Bank of America. Plaintiff cites to his Ex. E. (Id., p. 5). Plaintiff also states that the billing statements indicated that on June 10, 2006, MBNA changed its name to "FIA Card Services, National Association FIA." Thus, Plaintiff avers that the billing statements from NEA Member Benefits from March 2006 through September 2006 were "completely fraudulent because MBNA did not change its name to FIA Card Services until June 10, 2006." (Id.).

Plaintiff alleges that the October 6, 2009 letter Defendant's representative (Melanie Brancaccio) sent Sandy Walker stating that "on October 30, 2007, we transferred $5,000.00 to account number 020 320 4557" was false since this cash transfer was for account number 5329 0419 4983 9473 and not for account number 020 320 4557. Plaintiff cites to his Ex. G. (Id.).

Plaintiff states that under the revised Credit Card Agreement Sandy Walker received from NEA Member Benefits, 33 fraudulent, undated checks were issued by Defendant and by FIA Card Services, N.A. (Id., pp. 6-7). In total, Plaintiff states that Sandy Walker received 48 checks and 33 were illegal undated checks. Plaintiff details the alleged fraudulently checks on page 7 of his Second Amended Complaint. Plaintiff states that he and Sandy mailed letters to Defendant Bank of America to try and resolve the issues he had with the checks, and that "in the summer of 2011, after not being provided with straight answers from Bank of America, monthly payments were no

7

longer paid." (Id., p. 8). Thus, Plaintiff admits that he and Sandy incurred or were responsible for debt and that they failed to fully satisfy the debt.

Plaintiff states that he filed a complaint against Bank of America in December 2011, and that the matter was transferred to the Consumer Financial Protection Bureau. (Id.). Plaintiff states that he did not receive any help from the Consumer Financial Protection Bureau and that he again tried to deal directly with Defendant BOA. Plaintiff states that on January 5, 2012, a BOA document was download for him that listed National Education name on an account statement indicating $21,777.42 was owned on account number 5329 0419 4983 9473 and that he was the co-borrower. (Id.). Plaintiff cites to his Ex. L. Plaintiff seems to allege that BOA had to purge account number and Fleet One Money Market Savings Account number 500 302 4585 since Brancaccio listed 020 320 4557 account in her October 6, 2009 fraudulent letter and he was writing letters requesting documents on those accounts.

Plaintiff requested BOA's representative Matt Mauer to provide him copies of billing statements, documents and Credit Card Agreement information in June 2012, and Mauer mailed Plaintiff and Sandy Walker a letter in response, dated June 22, 2012. Mauer's letter stated that due to non-payment of the Walker's account, the account was charged off as a loss to the bank on February 29, 2012, the balance owed was $22,178. 76. Plaintiff also received copies of the billing statements. (Id., p. 9). Plaintiff cites to his Ex. N.

Further, Plaintiff avers that the June 2, 2011 and July 15, 2011 Credit Card Agreements of Defendant BOA were illegal since they "are oral written (sic) by [BOA]" and since no signatures or dates of either party are on the Agreements. (Id.).

Plaintiff also avers that accounts ending in 9473 and 1951 may not be solely owned by Defendant BOA and that NEA may also be an owner.

Plaintiff states that Mauer ignored his requests under the FOIA. (*Id.*, p. 11).

In short, Plaintiff states that he filed his instant Complaint in federal court due to the fraudulent October 6, 2009 letter, BOA representative Melanie Brancaccio sent Sandy Walker, in which Brancaccio stated that BOA's "records indicate that on November 17, 2003 we transferred $68,270.00 to your Bank of America account number 020 320 4557 and on October 30, 2007, we transferred $5,000.00 to the same account." Plaintiff also states that he filed the instant action since Defendant BOA sent Sandy walker 33 undated fraudulent checks despite BOA's statement that Access Checks without printed expiration dates will not be honored. Plaintiff also states that since the Credit Card Agreement was illegal, he filed this instant action. (*Id.*, p. 11).

As relief (*Id.*, p.12), Plaintiff requests as follows:

> Because of the fraudulent October 6, 2009 letter, undated checks, intentional fraudulent statements stated on billing statements, being denied written requests for documents from [BOA] and blocked account by [NEA] and the illegal Credit Card Agreement the damages done to [Plaintiff] in regards to his credit report by [BOA] and the embarrassment, [Plaintiff] is requesting a total of Five Million ... dollars."

## III.    DISCUSSION.

1. *Plaintiff's Motion for Default Judgment (Doc. 15) and Defendant's Motion to Set Aside Default (Doc. 16)*

We first consider Plaintiff's Motion for Default Judgment **(Doc. 15)** and Defendant's Motion to Set Aside Default **(Doc. 16).** As mentioned, on March 7, 2013, after the Clerk entered Default

against Defendant due to Defendant's failure to timely respond to Plaintiff's Second Amended Complaint (Doc. 10), Plaintiff filed a 1-page Motion for Default Judgment seeking, without a basis for any damages, entry of a Judgment against Defendant in the amount of $5 million. **(Doc. 15).** On March 8, 2013, Defendant Bank of America filed a Motion to Set Aside the Entry of Default, under Fed.R.Civ.P. 55(c), and Opposition to Plaintiff's Motion for Default Judgment with an attached Affidavit of Defendant's counsel, and a brief in support thereof. **(Docs. 16,** 16-1 & 17). The Affidavit of Defendant's counsel is also attached to Defendant's brief. (Doc. 17-1). Both Motions (Docs. 15 & 16) have been briefed. We first discuss Defendant's Motion to Set Aside the Entry of Default. (Doc. 16).

We must address the three factors which the Court considers in deciding whether to set Aside Default. We agree with Defendant BOA that it is entitled to have the Default entered against it (Doc. 10) set aside under Rule 55(c), since we find that there is no prejudice to Plaintiff, the proceedings will not be adversely impacted, BOA has a meritorious defense to Plaintiff's claims, and BOA has shown good cause and acted in good faith. (Doc. 17). Defendant also submitted the Affidavit of Defendant's counsel (Doc. 16-1) to support its Doc. 16 Motion to Set Aside Default. We also agree with Defendant that "the Third Circuit 'does not favor entry of defaults or default judgments.'" (Doc. 17, p. 3)(citing *U. S. V. $55,158.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984)).

Defendant states the proper standard to be utilized by the Court in exercising its discretion when determining whether default should be set aside. (Doc. 17, p. 4). Defendant also correctly

cites to the factors the Court should consider. In the case of *Hookey v. Dalton*, 2010 WL 4237310,

*3 (M.D. Pa. 10-21-10), the Court stated:

> The court may set aside an entry of default for good cause shown.
> Fed.R.Civ.P. 55(c). In determining whether to exercise its discretion to set
> aside an entry of default, the court must consider the following three
> factors: (1) whether the defendant has a meritorious defense; (2) whether the
> plaintiff would be prejudiced by vacating the default; and (3) whether
> the default occurred as a result of the defendant's culpable conduct. *Budget
> Blinds, Inc. v. White*, 536 F.3d 244, 256 (3d Cir.2008) (citing *United
> States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir.1984)).
> Any doubt should be resolved in favor of setting aside the default and
> reaching a decision on the merits. *Gross v. Stereo Component Systems, Inc.*,
> 700 F.2d 120, 122 (3d Cir.1983).

*See also Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 73-74 (3d Cir. 1987); *U. S. V. $55,158.05 in*

*U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984). Also, this Court has followed the *Emcasco* factors

in *Accu-Weather, Inc., v. Reuters, Ltd.*, 779 F.Supp. 801 (M.D. P a. 1991). As stated, Defendant is

correct in that the Courts do not favor default and prefer to decide cases on their merits. *See*

*Hookey v. Dalton*, 2010 WL 4237310, *3.

In applying the stated factors to the present case, we agree with the Defendant that the

Default entered against it (Doc. 10) should be set aside. We also agree with Defendant that Plaintiff

will not be prejudiced if the default against it is set aside. "Setting aside an entry of default

prejudices a plaintiff where it results in 'loss of available evidence, increased potential for fraud or

collusion, or substantial reliance upon the judgment.'" *Feliciano v. Reliant Tooling Co.*, 691 F.2d

653, 657 (3d Cir.1982). *Hookey v. Dalton*, 2010 WL 4237310, *3. As Defendant states, Default

was entered against it on March 4, 2013, and Defendant filed its Motion to Set Aside Default on

March 8, 2013, only four days later. Further, there is no credible claim that there has been a loss of

available evidence, that there is an increased potential for fraud, or that Plaintiff had a substantial reliance upon the Default in just four days. In his Doc. 25 opposition brief, Plaintiff states that there has been many fraudulently statements made in this case and made in the Affidavit of Defendant's counsel, Doc. 16-1. Regardless, we find that Plaintiff will not be prejudiced if the Doc. 10 Default entered against Defendant is set aside. Further, Plaintiff does not address the stated relevant criteria in determining if he will be prejudiced if the Default against Defendant is set aside. In any event, we agree with Defendant and find that the record does not show that setting aside the default against Defendant will prejudice Plaintiff.

Further, we find that Defendant's conduct was not culpable. "A defendant's conduct is culpable where its delay in answering is willful or in bad faith. *See Feliciano,* 691 F.2d at 657. More than mere negligence must be demonstrated. *Hurtz v. Woma Corp.,* 732 F.2d 1178, 1183 (3d Cir.1984). Determining whether neglect is excusable is an 'equitable' determination that 'takes account of all relevant circumstances surrounding the party's omission.' *Manus Corp. v. NRG Energy, Inc.,* 188 F.3d 116, 125 (3d Cir.1999) (citation omitted)." *Hookey v. Dalton,* 2010 WL 4237310, *3.

In his Affidavit, Defendant's counsel, Andrew J. Soven, avers that on February 22, 2013, he was retained to represent Defendant BOA in this case, and that he asked Attorney Gross to draft a Motion to Dismiss in response to Plaintiff 's Complaint. Attorney Soven then avers as follows:

> 4. Mr. Gross inadvertently mistook a stamp on the front of the Complaint which noted that it was received by Defendant's legal department on February 12, 2013 to be the date the Defendant was purportedly served.

5. Based upon this stamp, Mr. Gross mistakenly calculated the date by which Defendant was required to respond to the Complaint to be March 5, 2013, twenty-one days afer February 12, 2013.

6. I reviewed and revised the Motion to Dismiss drafted by Mr. Gross. Based on my understanding that the response to the Complaint was due on March [5, 2013], and due to other time constraints, I chose to file the Motion on March 5, 2013, the date which I believed that a response was due.

(Doc. 16-1, pp. 2-3, ¶'s 4-6).

Plaintiff contends that Soven's Affidavit is rife with false statements and contradictions. However, we find no evidence to dispute Soven's averments. Based on Soven's Affidavit, we find that Defendant was not culpable in  failing to timely respond to Plaintiff's Second Amended Complaint.  We find  that there is  good cause to set aside Default based on Soven's Affidavit.  We find that Defendant's failure to timely respond to Plaintiff's Second Amended Complaint was not wilful or in bad faith.  We find that Defendant's failure to respond to Plaintiff's Second Amended Complaint was due to a mistake as to Defendant's response date by Defendant's retained legal counsel, and a mistake  by Defendant's counsel as to when Defendant  was served with Plaintiff's second amended pleading.  *See Hookey v. Dalton,* 2010 WL 4237310, *3; *Johnson v. Granlund,* Civil No. 10-1483, M.D. Pa., August 2011 Memorandum and Order.

Additionally, we find that Defendant's Brief (Doc. 17, pp. 6-10) sufficiently demonstrates that Defendant has a complete and meritorious defense to Plaintiff's claims.  "A meritorious defense exists if the alleged facts which, 'if established at trial, would completely bar plaintiff['s] recovery.' *Jackson v. Delaware County,* 211 F.R.D. 282, 284 (E.D.Pa. 2002) (citations omitted). The defaulting party is not required to 'prove beyond a shadow of a doubt that [it] will win at trial, but merely to show that [it has] a defense to the action which at least has merit on its face.' *Id.* (citations omitted)."

*Hookey v. Dalton,* 2010 WL 4237310, *3. Based on our review of Plaintiff's Second Amended Complaint, we agree with Defendant that Plaintiff has failed to plead fraud with the required particularity sufficient under Fed.R.Civ.P. 9(b). As discussed above, Plaintiff's claims of fraud derive in large part from the changes in the corporate ownership of the credit card accounts of he and Sandy Walker. We note that while Plaintiff can represent himself and his claims *pro se*, he cannot represent any interest or purse any claims on behalf of Sandy Walker. It is well established "that, while people may appear on behalf of themselves *pro se*, a person may not act as an attorney on behalf of others in federal court." *Kraemer ex rel. Kraemer v. Pennsylvania,* 2011 WL 4336671, *4 (E.D. Pa. Sept. 15, 2011)(citing 28 U.S.C. §1654). Thus, insofar as Plaintiff raises claims in his Second Amended Complaint on behalf of Sandy Walker, such claims are not proper and must be raised by an attorney on Sandy's behalf or by Sandy representing herself *pro se*.

Initially, we find that Plaintiff's Second Amended Complaint is not in compliance with Fed.R.Civ.P. 8(a). Rule 8(a) states that "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed.R.Civ.P. 8(a). . *See Burke v. Twp. of Cheltenham,* 742 F.Supp.2d 660, 667 (E.D. Pa. 2010)("Factual allegations must be enough to raise a right to relief above the speculative level ... .")(quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955). A court must accept as true all of the factual allegations contained in a complaint, but that requirement does not apply to legal conclusions. *Id*.

In order to comply with Rule 8, a Complaint must contain at least a modicum of factual specificity, identifying the particular conduct of the defendant that is alleged to have harmed the plaintiff, so that the court can determine that the complaint is not frivolous and a defendant has

14

adequate notice to frame an answer. *Frazier v. Southeastern Pennsylvania Transp. Auth.*, 785 F.2d 65, 68 (3d Cir. 1986). Under even the most liberal construction, Plaintiff's Second Amended Complaint is in violation of Rule 8. It did not give Defendant fair notice of what Plaintiff's claims against it are and the grounds upon which they are rested. We further find that Plaintiff's Second Amended Complaint is not in conformity with Rule 8 of the Federal Rules of Civil Procedure, since it does not set forth in brief, concise, and understandable terms the conduct of Defendant about which Plaintiff is complaining.

In *Saltzman v. Independence Blue Cross*, 2009 WL 1606887, *4 (E.D. Pa.), the Court stated:

> The Court in *Iqbal* explained that, although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. *Id.* at 1949, 1953. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 555); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir.2008) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." (citing *Twombly*, 550 U.S. at 556 n. 3)). **Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged**." *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 556).

(Emphasis added). *See also Sims v. Piazza*, 2009 WL 3147800, *5 (M.D. Pa.)("Legal conclusions without factual support are not entitled to the assumption of truth.")(citation omitted).

"Under Pennsylvania law, fraud, also referred to as intentional misrepresentation, contains the following elements: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the

intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Schnell v. Bank of New York Mellon*, 828 F.Supp. 2d 798, 804-05 (E.D. Pa. 2011).

Defendant contends that Plaintiff's Second Amended Complaint alleging a plethora of fraud and fraudulent conduct is in violation of Rule 9(b) of the Federal Rules of Civil Procedure because Rule 9(b) requires specific factual averments of misrepresentation in order for a plaintiff to properly raise a claim for fraud or conspiracy. (Doc. 17, pp. 7-8). The Third Circuit has determined that in order to comply with Rule 9(b)'s particularity requirement of a fraud claim, the following elements must be pled: (1) a specific false representation of material facts; (2) knowledge by the person who made the misrepresentation as to its falsity; (3) ignorance of its falsity by the person to whom the representation was made; (4) the intention that the representation should be acted upon; and (5) the plaintiff acted upon the false representation to his or her damage. *Christidis v. First Pennsylvania Mortgage Trust*, 717 F.2d 96, 99 (3d Cir. 1983). Rule 9(b) is satisfied if a Complaint sets forth precisely what omissions or statements were made in what documents or oral statements and the manner in which they misled the plaintiff, and what benefit the defendant gained as a consequence of the fraud. *In re Theragenics Corp. Securities Litigation*, 105 F. Supp. 2d 1342, 1348 (N.D. Ga. 2000) (citing *Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11 th Cir. 1997)).

Based on our above discussion of Plaintiff's allegations in his Second Amended Complaint, we agree with Defendant that Plaintiff's pleading is in violation of Rule 9(b) and that "all purported claims against Defendant are predicated on an alleged fraud for which no facts have been plead."

16

(*Id.*, p. 8). As mentioned, we agree with Defendant that Plaintiff admits that he and Sandy incurred or were responsible for debt and that they failed to fully satisfy the debt. We further concur with Defendant that Plaintiff has failed to allege that he has suffered any damages.

In his Civil Cover Sheet filed with his Second Amended Complaint, Plaintiff indicated that this Court's jurisdiction was based on federal question, 28 U.S.C. §1331, and that his case involved "Banks and Banking." (Doc. 5, p. 13). Plaintiff stated as his cause of action "fraudulent letter, illegal checks and fraudulent statements on billing statements." (*Id.*). We agree with Defendant that insofar as Plaintiff is deemed as raising a claim(s) under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681, *et seq.*, even though Plaintiff does not reference the FCRA, Plaintiff fails to state a private right of action under the FCRA. (*Id.*, pp. 8-9).

In *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 191 (3d Cir. 2009), the Third Circuit Court stated:

> "Congress enacted the FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 127 S.Ct. 2201, 2205, 167 L.Ed.2d 1045 (2007). In doing so, Congress sought to preserve the consumer's privacy in the information maintained by consumer reporting agencies. *Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 725 (7th Cir.2004). A "consumer reporting agency" is defined as: "any person which, for monetary fees, dues, or a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. § 1681a(f).

(Footnote 5 omitted).

The Court in *Gelman*, 583 F.3d at 192, also stated:

Congress gave the Federal Trade Commission ("FTC") primary responsibility for governmental enforcement of the FCRA. 15 U.S.C. § 1681s. However, the FCRA also creates a private cause of action. *See* 15 U.S.C. §§ 1681n-o. Sections 1681n and 1681o establish civil liability for willful and negligent noncompliance with §1681. It allows recovery of actual damages, 15 U.S.C. § 1618o, as well as statutory and punitive damages if a violation is "willful." 15 U.S.C. § 1681n.FN8

> FN8. "Willful" violations include reckless disregard of any requirement of the FCRA. *See Safeco Ins. Co. of America v. Burr, supra.*

Sections 1681n and 1681o of the FCRA provide that "[a]ggrieved individuals can seek redress for damages resulting from both 'willful' and 'negligent' noncompliance with that statute." *Gagliardi v. Equifax Information Services, LLC*, 2011 WL 337331, *7 (W.D. Pa. Feb. 3, 2011). Under §1681n, willful noncompliance with any requirement imposed under the FCRA can result in liability for actual damages and punitive damages. Under §1681o, negligent noncompliance with the substantive provisions of the FCRA can result in liability only for actual damages. *Id*. at *14. Thus, §1681n and §1681o are merely remedy provisions of the FCRA and are not substantive provisions.

"The FCRA imposes civil liability upon a person who wilfully obtains a consumer report for a purpose that is not authorized by the FCRA." *Huertas v. Galaxy Asset Management*, 641 F.3d 28, 34 (3d Cir. 2011). The FCRA "expressly permits distribution of a consumer report to an entity that 'intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, *or review or collection of an account of, the consumer.*'" *Id*. (emphasis original).

The law is clear that "subsections (a) and (e) of §1681s-2 [of the FRCA] create no private right of action." *Schroeder v. Verizon Pennsylvania, Inc.*, 2011 WL 2651107, *2 n. 2 (M.D. Pa. June 16, 2011) adopted by 2011 WL 2650721 (M.D. Pa. July 6, 2011)(citing *Huertas v. Galaxy Asset Management*, 641 F.3d 28, 34 (3d Cir. 2011)("[Plaintiff] cannot base his claim on 15 U.S.C. §1681s-2(a)(1)(A), because no private right of action exists under that provision.")); *Kibbie v. BP/Citibank*, 2009 WL 2950365, *6 (M.D. Pa. Sept. 9, 2009).

A private right of action exists under §1681s-2(b) of the FCRA. *See Kibbie v. BP/Citibank*, 2009 WL 2950365, *7; *Schroeder v. Verizon Pennsylvania, Inc.*, 2011 WL 2651107, *2 n. 2; *Shap v. Capital One Financial Corp.*, 2012 WL 1080127, *2 (E.D. Pa. March 30, 2012)("An individual may assert a private cause of action for violations of §1681s-2(b) ... ."); *Simmsparris v. Countrywide Fin. Corp.*, 652 F.3d 355, 358 (3d Cir. 2011). Thus, Plaintiff can raise claims under §1681s-2(b) against Defendant BOA. However, Defendant BOA argues that insofar as Plaintiff is construed as raising claims against it under §1681s-2(b) in his Second Complaint, such claims fail as a matter of law. Defendant BOA's duties under §1681s-2(b) as a credit furnisher arise only after it receives a notice from a Credit Reporting Agency ("CRA") with respect to a disputed account. *See Simmsparris v. Countrywide Fin. Corp.*, 652 F.3d at 359 ("[A] private citizen wishing to bring an action against a furnisher must first file a dispute with the consumer reporting agency, which then must notify the furnisher of information that a dispute exists. Only after this notification can the furnisher face any liability to a private individual.").

"A furnisher of information is under no duty to conduct an investigation regarding a disputed entry on a consumer's credit report pursuant to §1681s-2(b) until the furnisher receives

notice of the dispute from a consumer reporting agency." *Schroeder v. Verizon Pennsylvania, Inc.,* 2011 WL 2651107, *7(citations omitted). Further, "[a]fter being notified of a dispute by a consumer reporting agency, a furnisher must 'conduct an investigation with respect to the disputed information.'" *Id.*(citation omitted). The furnisher must conduct a "reasonable investigation" of its records "to determine whether the disputed information can be verified." *Id.*(citation omitted). "Absent allegations of fraud, identity theft, or other issues not identifiable from the face of its records, the furnisher need not do more than verify that the reported information is consistent with the information in its records." *Id.*(citations omitted).

Defendant BOA argues that Plaintiff's Second Amended Complaint fails as a matter of law under §1681s-2(b) since Plaintiff has not alleged any of the above elements. Defendant states that Plaintiff 's Second Amended Complaint "[i]s totally devoid of factual allegations from which the Court could infer that an actual violation of the FCRA has occurred." (Doc. 17, p. 9). We do not find that Plaintiff alleges he ever submitted any dispute to the CRAs or that Defendant ever received notice of any dispute from any CRA. As Defendants state "Plaintiff does not present any claim that he filed a dispute with any of the major credit reporting agencies." (*Id.*).

Defendant further points out that even if Plaintiff has stated a cognizable claim under §1681s-2(b) of the FCRA, any such claim would be time-barred. "FCRA provides that claims must be brought 'not later than the earlier of': (1) 2 years after the date of discovery by the Plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs. 15 U.S.C. §1681p." *Van Veen v. AT&T Corp.,* 2011 WL 4001004, *2 (E.D. Pa. May 25, 2011). Defendant correctly state that "the disputed transactions

occurred in 2003 and 2007." (*Id.*). As indicated above, in his Second Amended Complaint, Plaintiff states that he filed his instant action in federal court due to the fraudulent statement of BOA's representative Melanie Brancaccio to Sandy Walker that BOA's "records indicate that on November 17, 2003 we transferred $68,270.00 to your Bank of America account number 020 320 4557 and on October 30, 2007, we transferred $5,000.00 to the same account." (Doc. 5, p. 11). As stated above, Plaintiff filed his original Complaint against Defendant Bank of America on December 28, 2012. (Doc. 1). Thus, we agree with Defendant that even if Plaintiff did state a claim under the FCRA, it is time-barred since it was brought after the 2-year and 5-year limitation periods.

Therefore, we find that Defendant has a meritorious defense to the claims raised by Plaintiff in his Second Amended Complaint.

We find that Defendant's failure to timely respond to Plaintiff's Second Amended Complaint was not wilful or in bad faith. We find that Defendant's failure to respond to Plaintiff's Second Amended Complaint was due to a mistake by Defendant's counsel as to the date Defendant was served with Plaintiff's pleading. We also find that Defendant's counsel believed that Defendant's response to Plaintiff 's stated pleading was due on March 5, 2013. Thus, we will recommend that the Court grant Defendant's Motion to Set Aside Default. **(Doc. 16)**. *See Hookey v. Dalton,* 2010 WL 4237310, *3.

Also pending before the Court is Plaintiff's 1-page Motion for Default Judgment. **(Doc. 16).** As stated, on March 7, 2013, Plaintiff filed a Motion for Default Judgment against Defendant seeking entry of judgment in the amount of $9 million, *sans* any substantiation for his

21

damages. (Doc. 16). An entry of default under Rule 55(a) of the Federal Rules of Civil Procedure must precede an entry of default judgment under Rule 55(b)(2). *See Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.,* 175 Fed. App'x 519, 521 n. 1 (3d Cir. 2006). In the present case, there has been Default entered against Defendant. However, since we will recommend that the Default entered against Defendant be set aside, we will also recommended that Plaintiff's request for Default Judgment against Defendant (Doc 15) be denied.

Accordingly, we will recommend that the Court grant Defendant's Motion to Set Aside Default **(Doc. 15)** and deny Plaintiff 's Motion for Default Judgment **(Doc. 16).**

2. *Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 13)*

As stated, on March 5, 2013, Defendant filed a Motion to Dismiss Plaintiff 's Second Amended Complaint under Rule 12(b)(6) and Rule 9(b). (Doc. 13). Defendant's motion has been briefed. In light of our above discussion recommending the Default against Defendant be set aside, we recommend that the Court accept Defendant's Doc. 13 Motion as being timely filed, *nunc pro tunc.*

In *Reisinger v. Luzerne County,* 712 F.Supp. 2d 332, 343-344 (M.D. Pa. 2010), the Court stated:

> The Third Circuit Court of Appeals recently set out the appropriate standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions *Bell Atlantic Corp. v. Twombly,* 550 U.S. 433 (2007), and *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937 (2009). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task

that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).

> [D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal,* 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny],* 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id. Fowler,* 578 F.3d at 210-11.

> The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " Guirguis v. Movers Specialty Services, Inc., No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) (quoting *Twombly,* 550 U.S. at 555) (not precedential).

Based on our detailed description above, we agree with Defendant's assessment of Plaintiff 's Second Amended Complaint in that Plaintiff does not deny there were cash advances taken of the credit card accounts of he and Sandy, and that Plaintiff's allegations focus on the names of the companies and financial institutions that were entitled to collect the debt. (Doc. 14, p. 2). As Defendant summarizes, Plaintiff 's Second Amended Complaint "appears to allege that

Plaintiff and his wife [Sandy] took cash advances (in 2003 for $68,270.00 and again in 2007 for $5,000.00) from their National Education association ("NEA") affinity credit card accounts and deposited the money in their personal checking accounts. In 2011, Plaintiff stopped paying the balance remaining on those credit card accounts. When Defendant reduced the credit limit on Plaintiff's account in 2009, Plaintiff demanded documents relating to the accounts and began to demanded an explanation as to how he owned a balance to Defendant when he opened the accounts in 1988 with MBNA." (*Id.*).

As thoroughly discussed above, we have agreed with Defendant that the allegations raised in Plaintiff's Second Amended Complaint clearly do not meet the requirements of Fed.R.Civ.P. 8 and 9. Also as thoroughly discussed above, we do not find that Plaintiff has stated any cognizable state law fraud claim or any claim under the FCRA against Defendant. Further, we find that any claim Plaintiff has attempted to raised under the FCRA is time-barred. We do not repeat our above discussion on Plaintiff's claims herein. In short, as Defendant states, Plaintiff "has failed to allege that he has suffered any damages and had failed to allege facts sufficient to support claim pursuant to any of the disparate legal theories alluded to in [his Second Amended] Complaint." (Doc. 26, p. 3).

In his opposition brief (Doc. 24), Plaintiff does not address the legal arguments which Defendant has asserted in its brief. Rather, Plaintiff largely repeats the allegations contained in his Second Amended Complaint. Also, Plaintiff 's Ex. 1 to his opposition brief, a 2008 decision from the Indiana Tax Court, is not binding precedence on the instant Court. Further, the Indiana Tax Court found that the Commerce Clause did not require MBNA to have a physical presence

24

in Indiana to be subject to the Financial Institutions Tax ("FIT"), and that MBNA's economic presence in Indiana was sufficient for Indiana to impose the FIT on MBNA. We do not find the Indiana Tax Court case relevant to the present case.

Further, to the extent Plaintiff raises new facts and allegations in his opposition brief, we agree with Defendant that Plaintiff's new facts should be disregarded. (Doc. 26). In *Commonwealth of Pennsylvania ex. rel. Zimmerman v. PepsiCo, Inc.,* the Third Circuit stated "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." 836 F.2d 178, 181 (3d Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F. 2d 1101, 1107 (7th Cir. 1984), *cert. denied*, 470 U.S. 1054, 105 S. Ct. 1758, 84 L. Ed. 2d 821 (1984)). Therefore, based on the *Commonwealth of Pennsylvania ex. rel. Zimmerman* rationale, any claims Plaintiff has not raised in his Second Amended Complaint, but has attempted to raise in his opposition brief to Defendant's Motion to Dismiss, will not be considered by the undersigned in this Report and Recommendation.

Based on our detailed discussion above, we find that Defendant's Motion to Dismiss Plaintiff 's Second Amended Complaint **(Doc. 13)** should be granted. The Third Circuit has held that a Plaintiff who is proceeding *pro se* and whose Complaint fails to state a cognizable claim is entitled to amend his pleading unless the Court finds bad faith, undue delay, prejudice, or futility. *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 111 (3d Cir. 2002); *Alston v. Parker*, 363 F.3d 229, 235-236 (3d Cir. 2004). Plaintiff has filed three Complaints in this case to date, Docs. 1, 3 and 5. Plaintiff's original Complaint was filed on December 28, 2012, almsot four months ago. Based on well-settled law as detailed in our discussion above, we find futility in granting

25